# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

NIKKI L.[1],

|  | Plaintiff, |  |
| --- | --- | --- |
| v. |  | 3:20-CV-934 (ATB) |
| ANDREW SAUL, |  |  |
|  | Defendant. |  |

---

PETER A. GORTON, ESQ., for Plaintiff
MOLLY CARTER, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 2, 4,7).

## I.   PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on March 1, 2017, alleging disability beginning August 1, 2016. (Administrative Transcript ("T") at 112-13, 121).  Her application was denied initially on April 20, 2017.  (T. 122-27). At the request of the plaintiff, Administrative Law Judge ("ALJ") Melissa Hammock

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

conducted a hearing on March 20, 2019, at which plaintiff gave testimony. (T. 64-111). The ALJ also heard testimony from vocational expert ("VE") Amanda Armstrong. (*Id.*).

In a decision dated May 14, 2019, the ALJ found that plaintiff was not disabled. (T. 13-27).  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on June 29, 2020.  (T. 1-6).

## II.   **GENERALLY APPLICABLE LAW**

### A.   **Disability Standard**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

2

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps.  However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of

review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   FACTS

Plaintiff was born on November 21, 1971, making her 47 years old on the date of the administrative hearing. She lived in a house with her husband, who financially supported her, and their twenty-two year old daughter. (T. 70-71). Plaintiff did not have a driver's license. (T. 71). She relied on her husband and daughter for transportation. (*Id.*). Plaintiff dropped out of high school in the eleventh grade because

she was "sick all the time." (T. 71-72, 78-79). Her most recent work history included part-time office work at her husband's business, and some retail experience. (T. 72-78).

Plaintiff was diagnosed with multiple sclerosis ("MS") when she was a child, and continued treating for her condition into adulthood. (T. 79-80). She also suffered from optic neuritis, beginning when she was nine years old. (*Id.*). This condition caused permanent blindness in her left eye, and issues with depth perception. (T. 80-81). She fell two to three times a week due to her vision impairment. (T. 82). It also affected her ability to read, in that she could only read up to thirty minutes at a time before straining her eye and developing a migraine. (T. 81-82). She testified about certain situations, such as grocery shopping and cooking, that put her at risk of injuring herself due to her vision and depth perception issues. (T. 82-84).

Plaintiff also suffered from "very, very severe" migraines "every day, except for . . . four days a month, which could be migraine-free." (T. 90). She was forced to lay down "90 percent" of the day due to the "debilitating" pain. (T. 90). Anything that might stress her out could start the onset of a migraine. (T. 91). The medication plaintiff took for her migraines made her tired, nauseous, and dizzy. (T. 89-90).

Plaintiff also treated for asthma, and complained of back and lower extremity pain. (T. 85-88). She could not walk for more than ten minutes without experiencing pain, and could not "lift anything." (T. 88-89).

## IV.   **THE ALJ'S DECISION**

The ALJ first found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of August 1, 2016. (T. 15). Next, at step two, the ALJ

found that plaintiff had the following severe impairments: migraines; multiple sclerosis; obesity; optic neuritis, left eye; asthma; and degenerative disc disease.  (*Id.*).  At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P.  (T. 16-17).

At step four, the ALJ found that plaintiff had the residual functional capacity to perform light work, except

> she can occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; she can occasionally balance, stoop, kneel, crouch, and crawl; she can never operate a motor vehicle; she can have no exposure to pulmonary irritants beyond a level found in a climate controlled indoor work environment; she can have no exposure to temperature extremes; she can work on a computer screen for 30 minutes at a time, for a total of two hours per day; she can have no exposure to flashing lights; she must avoid concentrated exposure to bright lights; she can perform tasks that can be done with monocular vision and do not require peripheral vision on the left side; the individual has limited depth perception such that she is unable to make accurate judgments of distance and speed; and . . . she can perform tasks that do not require fine visual acuity. Fine visual acuity is defined as reading fine print (she can read 14 point font or larger), performing tasks such as threading a needle, and distinguishing small objects such as bolts.

(T. 17).

Next, the ALJ determined that plaintiff was unable to perform any past relevant work.  (T. 25).  However, the ALJ evaluated the VE testimony and found that plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  (T. 25-26).  Thus, the ALJ found that plaintiff was

6

not disabled.  (T. 27).

## V.   ISSUES IN CONTENTION

Plaintiff primarily contests the ALJ's analysis of the limitations posed by

plaintiff's migraine condition.  She raises the following arguments in support of her

position that the ALJ's decision is not supported by substantial evidence:

1.   The ALJ failed to properly assess plaintiff's limitations relative to time off-task and attendance.  (Plaintiff's Brief ("Pl.'s Br.") at 4-14) (Dkt. No. 7).

2.   The ALJ improperly weighed the opinion of plaintiff's treating physician, resulting in an RFC that was unsupported by any medical opinion. (Pl.'s Br. at 4-15).

3.   The ALJ erred in her step five determination.  (Pl.'s Br. at 15).

Defendant argues that substantial evidence supports the ALJ's findings that

plaintiff could sustain full-time work despite her migraines. (Defendant's Brief ("Def.'s

Br.") at 4-20) (Dkt. No. 15).  For the following reasons, this court agrees with the

defendant and will affirm the Commissioner's decision.

## DISCUSSION

## VI.   RFC/WEIGHING EVIDENCE

### A.   Legal Standards

#### 1.   RFC

RFC is "what [the] individual can still do despite his or her limitations.

Ordinarily, RFC is the individual's maximum remaining ability to do sustained work

activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular

and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill*, No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No.

8

3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2. Weight of the Evidence/Treating Physician

In making a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at *2-3 (1996). Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical issues," but are "administrative findings." The responsibility for determining these issues belongs to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at *2. These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d). The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered. *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d

Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  If an ALJ decides not to give the treating source's records controlling weight, then he must explicitly consider the four *Burgess* factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Burgess v. Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)).  "[T]he ALJ must 'give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion.' " *Id.* at 96 (citing *Halloran v. Barnhart*, 362 F.3d at 32).  Should an ALJ assign less than controlling weight to a treating physician's opinion and fail to consider the above-mentioned factors, this is a procedural error.  *Id.*  It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of the treating physician rule was not traversed." *Id.*

**B.   Application**

Plaintiff argues that the ALJ erred in evaluating the opinion offered by her treating physician.  Specifically, plaintiff focuses on the ALJ's failure to credit the absence and time off-task related limitations opined by plaintiff's primary care physician, Eric Lorraine, D.O.  Plaintiff contends that in rejecting Dr. Lorraine's opinion and omitting any limitations relative to absenteeism and/or time off-task in the RFC , the ALJ improperly substituted her lay judgment for undisputed medical opinion. This, plaintiff avers, resulted in an RFC that lacked any supporting medical opinion.

In order to assess plaintiff's contentions, the court turns first to the ALJ's

evaluation of Dr. Lorraine's formal opinion.  Dr. Lorraine completed a "Questionnaire" on January 29, 2019, in which he opined that plaintiff suffered from headaches "of varying etiology."  (T. 301).  Dr. Lorraine further noted that plaintiff had been partially compliant with treatment, indicating that plaintiff "refused MRI [and] neurological follow up" for her migraine complaints.  (*Id.*).  He indicated that plaintiff suffered at least one migraine each week, with a recovery period that lasted over four hours.[2]  (*Id.*).  Dr. Lorraine opined that plaintiff's migraines and/or medication would cause pain, fatigue, diminished concentration and diminished work pace.  (*Id.*).  Plaintiff would need to rest at work.  (T. 302).  Dr. Lorraine further opined that plaintiff's symptoms would cause her to be off task more than 33% of the work day.  (*Id.*).  With respect to absenteeism, Dr. Lorraine opined that plaintiff's bad days would cause her to miss three days of work per month.  (*Id.*).

The ALJ explicitly considered Dr. Lorraine's opinion, affording it "partial weight."  (T. 23).  While acknowledging that Dr. Lorraine was both a treating physician and an accepted medical source, the ALJ also noted that Dr. Lorraine's "treatment notes and reasoning actually contradict his overall functional assessments."  (*Id.*).  The ALJ cited to plaintiff's refusal to follow up with a specialist, extrapolating from this evidence that plaintiff's symptoms may not be as severely limiting as the physician's assessment suggested.  (T. 23-24).  The ALJ also pointed to plaintiff's report to Dr.

---

[2]This portion of the form is illegible as scanned into the formal record.  (T. 301).  The ALJ interpreted the form as stating that plaintiff has "migraines multiple times each week lasting for 4.4 hours each time."  (T. 23).  Plaintiff's counsel states that Dr. Lorraine indicated "about one migraine a week that has a migraine and recovery period that lasts over four hours."  (Pl.'s Br. at 3).

Lorraine that she experiences "sufficient relief from her migraine pain when using the medications . . . prescribed." (T. 24). Although not explicitly discussed by the ALJ, it is clear from the RFC determination that she rejected Dr. Lorraine's restrictive limitations as to absenteeism and time off-task. (T. 17).

The court's review of the relevant evidence of record, including Dr. Lorraine's documented treatment history with plaintiff, indicates that the ALJ's assessment of treating physician Dr. Lorraine's opinion is supported by the record. Although, perhaps, the ALJ did not "explicitly walk through" each of the factors set forth in *Burgess* while assessing the opinion, a careful read of the ALJ's decision makes clear that she adequately considered them, and "applied the substance of the treating physician rule[ ]" to Dr. Lorraine's opinion. *Davenport v. Saul*, No. 3:18-CV-01641, 2020 WL 1532334, at *30 (D. Conn. Mar. 31, 2020) (citation and quotation marks omitted). It is well settled that "[t]he Second Circuit does not require a slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013); *see also Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) ("While the ALJ here did not always explicitly consider the *Burgess* factors when assigning the treating physician[s'] opinions less than controlling weight, we nonetheless conclude that the ALJ provided sufficient 'good reasons' for the weight assigned.").

For example, the ALJ explicitly noted that plaintiff's "primary treating source for her chronic health conditions has been her family physician, Eric Lorraine, D.O.," and that plaintiff had declined specialized, neurological care for her migraine condition,

despite Dr. Lorraine's recommendation.  *See* 20 C.F.R. § 404.1527(c)(1) (examining relationship); § 404.1527(c)(5) (specialization).  The ALJ also cited to plaintiff's treatment notes with Dr. Lorraine (and other providers from his office) dating from October 2016 through November 2018, indicating that the ALJ considered the length and nature of the treatment relationship, and the frequency of examination. (T. 19-22) *See* 20 C.F.R. § 404.1527(c)(2) (treatment relationship).

The ALJ also addressed the remaining two remaining *Burgess* factors: the consistency of the opinion with the entire record, *see* 20 C.F.R. § 404.1527(c)(4) (consistency), and the sufficiency of the evidence cited in support of the opinion, *see* § 404.1527(c)(3) (supportability).  The ALJ specifically indicated in her opinion that plaintiff's course of treatment was "notably limited," considering the extent of limitation alleged.  (T. 22).  Moreover, the ALJ assessed the clinical examination findings of record, noting that plaintiff's neurological functioning consistently remained intact.  (T. 24).  As previously discussed, the ALJ also contrasted Dr. Lorraine's treatment notes, indicating that the plaintiff's migraine medication was providing relief, with Dr. Lorraine's restrictive limitations.  (T. 23-24).  Thus, while the ALJ did not explicitly name each of the factors set forth in *Burgess*, the court's review of the ALJ's decision proves that she adequately considered them.  Accordingly, the court finds no error in the ALJ's application of the treating physician rule.

Moreover, "a searching review of the record assures [the Court] that the substance of the treating physician rule was not traversed" in this case.  *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (citation and quotation marks omitted).  At the

13

outset, the court agrees that Dr. Lorraine's opinion lacked sufficient explanation supporting the restrictive limitations contained therein.  Provided in check-box form, the opinion is devoid of any commentary as to why Dr. Lorraine believed that plaintiff would be off-task for more than 33% of the workday, or would be absent three days per month.  *See Pollino v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 428, 437 (W.D.N.Y. 2019) (ALJ properly afforded treating physician opinion less than controlling weight, where plaintiff's purported inability to sustain full-time employment was "offered on a check-box form, totally devoid of explanation as to how [the physician] arrived at those assessments."); *Kristen B. v. Comm'r of Soc. Sec.*, 5:20-CV-0032 (ML), 2021 WL 950509, at *9 (N.D.N.Y. Mar. 12, 2021) ("[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.") (citation omitted); *cf. Harbot v. Berryhill,* 335 F. Supp. 3d 382, 386-387 (W.D.N.Y. 2018) (rejecting ALJ's evaluation affording "little" weight to treating physician's "check-box" opinion, where the opinion was fully supported by narrative explanations and accompanied by a page-and-a-half attachment of typewritten notes expounding on the form answers).  To the extent the ALJ could not reconcile Dr. Lorraine's unexplained, restrictive limitations with his rather unremarkable history of treatment, it was not error for the ALJ to afford Dr. Lorraine's limitations less than controlling weight.  *See Charlotte K. v. Comm'r of Soc. Sec.*, No. 3:17-CV-642 (ATB), 2018 WL 4153925, at *14 (N.D.N.Y. Aug. 29, 2018) ("conflicts in the evidence are for the ALJ to resolve, and a treating provider's opinion, particularly when it is expressed in a 'check box' questionnaire, may be given less weight when it is contradicted by substantial evidence

in the record.").

Indeed, the restrictive limitations set forth in the Dr. Lorraine's opinion are largely contradicted by his own treatment notes. Plaintiff's treatment specific to her migraine condition is limited to four sporadic visits with Dr. Lorraine over the course of two years. In October 2016, plaintiff presented to Dr. Lorraine to "recheck migraines." (T. 284). Upon neurological examination, Dr. Lorraine found that plaintiff was alert and oriented, attentive and able to concentrate. (*Id.*). She denied aura, numbness, phonophobia, photophobia, tinnitus, weakness, associated confusion and incoordination. (*Id.*). Her speech was articulate and fluent, with no incoordination present. (*Id.*). Dr. Lorraine's assessment relative to plaintiff's migraines was "stable; continue meds." (T. 285).

Plaintiff did not seek treatment for her migraine condition again until March 2017, when she cited her migraines and optic neuritis as an "ongoing issue that she want[ed] to discuss with Dr. Lorraine."[3] (T. 290). Plaintiff expressed that she had a hard time holding a job because of computer screens, and the strain of using only her right eye[4] precipitated migraines. (*Id.*). She also stated that she had not seen a neurologist "because symptoms have been good." (*Id.*). Dr. Lorraine assessed that plaintiff's optic neuritis was, at that point, "likely to limit work given [sic] worsening of

---

[3]Although not necessarily suspicious, it appears that plaintiff's visit to Dr. Lorraine on this occasion was motivated by any inquiry into plaintiff's potential qualification for disability benefits. Specifically, the treatment note indicates that plaintiff "wants to know about the neuritis/migraines," and Dr. Lorraine's assessment is replete with references as to whether "disability" may be appropriate. (T. 291-92).

[4]The record reflects that plaintiff's optic neuritis caused her to be blind in her left eye.

the migraines due to the eye strain." (T. 291).  He also stated that there were "limitations enough given the cycle of computer work, focusing and eye strain worsening the migraines that disability may be necessary[.]" (T. 292).  Dr. Lorraine noted that he would need to review more of plaintiff's medical history before he could further opine on the issue of disability.  (*Id.*).  He directed plaintiff to continue with her prescribed migraine medication.  (*Id.*).

Six months later, in September 2017, plaintiff returned to Dr. Lorraine complaining that she had "had a migraine for a few days" and that the humidity was exacerbating her symptoms.  (T. 303).  Dr. Lorraine instructed her to continue with her migraine medication, at an increased dosage.  (T. 304).  He also added a second, intranasal medication to be taken at the onset of a migraine.  (*Id.*).

Plaintiff returned to Dr. Lorraine's office in March 2018, another six months later, for a "migraine recheck."  (T. 350).  Plaintiff reported that the increased dosage of medication was "working well."  (*Id.*).  Her physical examination, including neurological examination, was normal, and she was instructed to continue her medication as prescribed.  (T. 351).  When plaintiff returned in November 2018 for a physical examination, she reported that she had been "feeling well overall" and, other than her multiple sclerosis symptoms, which were "wacky" at that time of year, she had "no other concerns."  (T. 308).  Plaintiff's physical examination revealed normal findings, and Dr. Lorraine opined that plaintiff was "overall healthy."  (T. 310).

The aforementioned records constitute the sum of plaintiff's treatment as it pertained to her migraine condition, reflecting intermittent treatment intervention for

symptoms that were adequately addressed by an increase in plaintiff's medication. There is no evidence in the record to suggest that in the months between plaintiff's visits with Dr. Lorraine, she was silently suffering from such marked functional limitations as expressed in her treating physician's opinion. For the reasons expressed above, "substantial evidence in the record demonstrates that [Dr. Lorraine's] opinion is inconsistent with the record," and the ALJ did "not err by refusing to accord the [opinion] significant weight." *Torres v. Berryhill*, No. 3:18-CV-01485, 2020 WL 38939, at *4 (D. Conn. Jan. 3, 2020); *see also Krupczyk v. Comm'r of Soc. Sec.*, 342 F. Supp. 3d 352, 360 (W.D.N.Y. 2018) ("[A]n ALJ may disregard the opinion of a treating physician if it is . . . inconsistent with the record as a whole.").

Nor does the court find that the ALJ set her lay opinion against medical opinion in rejecting Dr. Lorraine's restrictive limitations as to absenteeism and time off-task. Rather, the ALJ declined to give controlling weight to an opinion of record finding that plaintiff had significant limitations in these areas, and instead relied on other medical evidence of record.  The ALJ reviewed Dr. Lorraine's opinion and compared it to his treatment notes, along with other substantial evidence of record, in reaching her weight assessment. In searching plaintiff's treatment notes, especially considering the lack of support included by Dr. Lorraine for limitations he identified, the ALJ did not interpret raw medical data.  Instead, the ALJ reasonably concluded that Dr. Lorraine's highly restrictive opinion was unsupported by his treatment notes, and therefore, were not credible. *See Cristina M. v. Saul,* No. 3:18-CV-0332 (CFH), 2019 WL 3321891, at *6 (N.D.N.Y. July 24, 2019) ("There is a difference between analyzing medical records to

17

determine what the weight of the evidence supports and interpreting raw medical data that would require the expertise of a physician or other trained medical source; the ALJ is precluded only from the latter.").

Accordingly, the court is not persuaded by plaintiff's argument that the ALJ ultimately formed an RFC that improperly lacked support by any medical opinion. In arriving at the plaintiff's RFC, the ALJ is tasked with the responsibility of reviewing all the evidence, resolving inconsistencies, and making a determination that is consistent with the evidence as a whole. *See Camarata v. Colvin*, No. 6:14-CV-0578 (MAD), 2015 WL 4598811, at *9 (N.D.N.Y. July 29, 2015) (quoting *Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008) (summary order)).  As a result, the RFC formulated by the ALJ need not "perfectly correspond with any of the opinions of medical sources cited in his decision, [because an ALJ is] entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order); *see Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) ("An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits [the reviewing] to glean the rationale of an ALJ's decision.' " (*quoting Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983))).  Thus, contrary to plaintiff's argument that the ALJ failed to include any limitations to being off task and/or absenteeism, "the ALJ merely declined to include limitations to support the marked limitations . . . opined[,] as he concluded that such limitations were not supported by the medical record." *Tamara M. v. Saul*, No. 3:19-CV-1138 (CFH), 2021 WL 1198359, at *11 (N.D.N.Y. Mar. 30, 2021) (No error

18

by ALJ in declining to include limitations to being off task and/or attendance in RFC determination, where substantial evidence supported the ALJ's assignment of weight and rejection of treating physician's restrictive limitations).

Based on the foregoing, the ALJ did not err in rejecting Dr. Lorraine's restrictive limitations relative to time off-task and absenteeism, as this opinion was not supported by substantial evidence.  Accordingly, and based on the ALJ's evaluation of the record evidence as a whole, the ALJ was not compelled to include limitations relative to these functions in her RFC determination.  *Robert L. v. Saul*, No. 8:19-CV-415 (MAD), 2020 WL 1689886, at *10 (N.D.N.Y. Apr. 7, 2020) ("Plaintiff ignores the fact that he has the burden of showing limitations beyond those described in the RFC");  *House v. Comm'r of Soc. Sec.*, No. 7:15-CV-1064 (LEK), 2016 WL 427532, at *10 (N.D.N.Y. Aug. 12, 2016) ("[T]he ALJ was not obligated to prove a lack of limitations . . . .").  Because the ALJ's evaluation of the evidence and ultimate RFC determination is supported by substantial evidence, remand is not warranted on this basis.

## VII.   STEP FIVE DETERMINATION

### A.   Legal Standard

At step five of the disability analysis, the burden shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform.  *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).  If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question that incorporates plaintiff's limitations.  *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981).  Although the ALJ is initially responsible for determining the claimant's capabilities based on all the

evidence, *see Dumas v. Schweiker*, 712 F.2d 1545, 1554 n.4 (2d Cir. 1983), a

hypothetical question that does not present the full extent of a claimant's impairments

cannot provide a sound basis for vocational expert testimony.  *See De Leon v. Sec'y of*

*Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984); *Lugo v. Chater*, 932 F.

Supp. 497, 503-04 (S.D.N.Y. 1996).  Conversely, the ALJ may rely on a VE's

testimony regarding the availability of work as long as the hypothetical facts the expert

is asked to consider are based on substantial evidence and accurately reflect the

plaintiff's limitations.  *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009).

Where the hypothetical is based on an RFC analysis supported by substantial facts, the

hypothetical is proper.  *Id*. at 276-77.

   **B.    Analysis**

   The ALJ presented the VE with a hypothetical that mirrored the ALJ's ultimate

determination of plaintiff's RFC.[5]  (T. 95-111).  The VE testified, based on his

professional experience, that there were jobs available in the national economy that an

individual with the same RFC as plaintiff would be able to perform. (*Id.*).  The ALJ

relied on this testimony at step five. (T. 25-26).  Because this court has found that the

ALJ's RFC determination was supported by substantial evidence, it also finds that the

ALJ's determination at step five, and the ultimate determination of disability, were

similarly supported by substantial evidence.

---

   [5]Although there was some initial confusion as to whether the ALJ's hypothetical included
limitations for "fine" visual acuity or "far" visual acuity, the VE ultimately remedied her error in
this regard and aligned her testimony with the limitations contained in the hypothetical which
became the ALJ's RFC determination.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint is **DISMISSED**, and it is

**ORDERED**, that judgment be entered for the **DEFENDANT.**

Dated: September 7, 2021

Andrew T. Baxter
U.S. Magistrate Judge